IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**FELIX BRIZUELA,**

       **Plaintiff,**

v.                                                    Civil Action No. 1:22-CV-104
                                                           (JUDGE KLEEH)

**MON HEALTH MEDICAL CENTER,**

       **Defendant.**

### REPORT AND RECOMMENDATION, AFTER INITIAL SCREENING, RECOMMENDING THAT PLAINTIFF'S COMPLAINT [ECF NO. 1] BE DISMISSED WITHOUT PREJUDICE AND THAT MOTION TO PROCEED IN FORMA PAUPERIS [ECF NO. 2] BE DENIED

On August 19, 2022, *pro se* Plaintiff Felix Brizuela ("Plaintiff") filed a Complaint against an entity, namely, Mon Health Medical Center ("Defendant"). [ECF No. 1, at 1]. Having screened Plaintiff's Complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2), the undersigned now **RECOMMENDS** that the Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim on which relief may be granted. The undersigned further **RECOMMENDS** that Plaintiff's related motion [ECF No. 2] to proceed *in forma pauperis* be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] Plaintiff, *pro se*, recently has filed 18 civil lawsuits in this Court, including the instant matter. The other civil matters are: (1) Brizuela v. Federation of State Medical Boards, 1:22-CV-66, (2) Brizuela v. Sarah Wagner, 1:22-CV-67, (3) Brizuela v. Douglas Sughrue, 1:22-CV-68, (4) Brizuela v. Michael DeRiso, 1:22-CV-69, (5) Brizuela v. WVU Medical Center, 1:22-CV-70, (6) Brizuela v. Mark Zogby, 1:22-CV-74, (7) Brizuela v. Tano O'Dell [sic], 1:22-CV-75, (8) Brizuela v. Highlands Hospital and Michelle Cunningham, 1:22-CV-76, (9) Brizuela v. Blue Cross Blue Shield, 1:22-CV-79, (10) Brizuela v. CPEP, 1:22-CV-82, (11) Brizuela v. KDKA TV, 1:22-CV-83, (12) Brizuela v. West Virginia Board of Pharmacy, 1:22-CV-84, (13) Brizuela v. Drug Enforcement Administration, 1:22-CV-87, (14) Brizuela v. WPXI Pittsburgh, 1:22-CV-90, (15) Brizuela v. USP Hazelton, 1:22-CV-93, (16) Brizuela v. Federal Bureau of Investigation, 1:22-CV-96, and (17) Brizuela v. Dr. Mark Johnson, 1:22-CV-105. Although these cases are separate matters, they all stem from circumstances concerning Plaintiff's career as a physician, including but not limited to his criminal prosecution and eventual guilty plea in this Court in Criminal Action No. 1:18-CR-1. The

Plaintiff, a resident of the Commonwealth of Pennsylvania, initially brought this matter in the Middle District of Pennsylvania on August 19, 2022. [ECF No. 1, at 1]. However, by memorandum opinion [ECF No. 5] and corresponding order [ECF No. 6], Magistrate Judge William I. Arbuckle transferred the matter from the Middle District of Pennsylvania to this District. Judge Arbuckle found that venue was not proper in the Middle District of Pennsylvania, and, quoting 28 U.S.C. § 1391(b)(2), transferred the matter to this District, where "a substantial part of the events or omissions giving rise to the claim" are alleged to have taken place. [ECF No. 5 at 2]. Judge Arbuckle was careful to note that he did not address Plaintiff's request to proceed *in forma pauperis* and had not conducted a screening of the merits of the case. Id., at 3-4.

Plaintiff seems to allege that Defendant is liable to him for its actions preceding a federal criminal investigation and prosecution of Plaintiff. Defendant appears to be a healthcare facility which Plaintiff alleges took certain administrative disciplinary action against him, culminating in Plaintiff's resignation from that facility. The precise nature of Plaintiff's factual allegations concerning Defendant, while expansive, are nonetheless poorly articulated in the Complaint and accompanying materials. Thus, the undersigned, in some regard, intuits what Plaintiff strives to articulate.

Broadly speaking, and in synthesizing allegations from the filings in Plaintiff's multiple *pro se* lawsuits pending in this Court, Plaintiff alleges that he was a physician practicing in this District. He had a specialty in neurology and pain management. In this District, Plaintiff was criminally prosecuted as reflected in Criminal Action No. 1:18-CR-1. Plaintiff was tried and

---

presiding District Judge, Hon. Thomas S. Kleeh, has referred all of these matters to the undersigned Magistrate Judge, for written Reports and Recommendations. Concurrently with the instant Report and Recommendation, the undersigned enters Reports and Recommendations as to several of the other matters. As such, given the commonality among the matters, there is some duplication in the citations to authority and analyses in the Reports and Recommendations.

convicted in Criminal Action No. 1:18-CR-1. As a result, he lost medical licenses which he held in West Virginia and Pennsylvania. Plaintiff appealed his conviction to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit reversed his conviction, and on remand, Plaintiff ultimately pled guilty to Distribution of Controlled Substances Outside the Bounds of Professional Medical Practice, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), as charged in Count Two in Criminal Action No. 1:18-CR-1.[2] Plaintiff was sentenced to imprisonment for a term of time served, followed by three years of supervised release. Plaintiff complains that, because of the felony conviction resulting from the guilty plea, he is unable to regain his medical license or otherwise find gainful employment. In the *pro se* civil cases which Plaintiff now seeks to bring here, he attempts to lodge grievances against a range of persons and entities who were involved in his criminal matters and/or other aspects of his defunct medical practice.

In the Complaint [ECF No. 1] in the instant matter, the named Defendant does not appear to be a legal entity. A search of the Business Organizations Database of the West Virginia Secretary of State, available online at https://sos.wv.gov/Pages/default.aspx, yields no results for an entity called "Mon Health Medical Center." There appear to be multiple other entities with similar names, but it is not appropriate for the undersigned to guess or assume which entity Plaintiff wishes to sue. The point, thus, is that Defendant does not appear to have properly identified or named a party-defendant.

As for the substance of Plaintiff's claims, they sound vaguely in employment and civil rights causes of action. In scattershot fashion, Plaintiff cites to certain legal authority and alleges

---

[2] Plaintiff also was prosecuted in another matter, Criminal Action No. 5:20-CR-22. It appears that Criminal Action 5:20-CR-22 resulted from the re-filing of charges after Criminal Action No. 1:18-CR-1 had been dismissed pursuant to a tolling agreement. The two matters ultimately were consolidated. [ECF No. 487 in Criminal Action No. 1:18-CR-1].

3

certain harm, including: "Title VI" [ECF No. 1, at 1]; violations of "multiple constitutional and civil rights . . . [i]including the [Fourteenth] [A]mendment [and] the [Fifth] Amendment" for due process concerns [ECF No. 1-1, at 3]; "unlawful termination" [ECF No. 1-1, at 3]; pain and suffering by Plaintiff himself and his family [ECF No. 1-1, at 3]; lost wages [ECF No. 1-1, at 3]; and 18 U.S.C. § 242 (criminal statute for deprivation of rights under color of law).

Plaintiff includes a single-spaced, densely-worded, and wide-ranging narrative [ECF No. 1-1, at 1-3] which appears to be correspondence addressed to Defendant itself. This narrative is a missive by which Plaintiff generally decries his underlying criminal prosecution; extolls his skill and success as a physician; criticizes the fashion in which Defendant's administrators allegedly evaluated his medical practice and forced his resignation; disagrees with Defendant's clinical assessment of his practice; and explains that the ultimate loss of his medical practice and inability to engage in that employment has curtailed his income, impacted him emotionally and physically, and had a deleterious effect on himself and his family. Again, as noted above, Plaintiff does not appear to identify a proper legal entity as a party-defendant herein, so Plaintiff's attribution of actions to Defendant is unclear.

Finally, in conjunction with the Complaint, Plaintiff filed a *pro se* Motion for Leave to Proceed *in forma pauperis* including an Application to Proceed Without Prepayment of Fees and Affidavit. [ECF No. 2].

On November 2, 2022, this Court, by the Honorable Thomas S. Kleeh, Chief United States District Judge, entered an Order of Referral [ECF No. 10], referring this matter to the undersigned United States Magistrate Judge in order "to conduct a scheduling conference and issue a scheduling order, for written orders or reports and recommendations, as the case may be, regarding any motions filed, and to dispose of any other matters that may arise."

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 1915(e)(2)(B), where a plaintiff is seeking to proceed without the prepayment of fees and costs, the court is obliged to screen the case to determine if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Courts often perform this screening before ruling upon the corresponding Motion for Leave to Proceed *in forma pauperis* and Application to Proceed Without Prepayment of Fees and Costs, and before service of process is effectuated. See Portee v. United States Dep't of Agric., No. 2:15-CV-13928, 2016 WL 4962727, at *2 (S.D.W. Va. July 14, 2016) (Tinsley, J.), *report and recommendation adopted*, No. 2:15-CV-13928, 2016 WL 4942023 (S.D.W. Va. Sept. 15, 2016) (Johnston, J.). The purpose of this statute is "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. See also Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 953 (4th Cir. 1995) (initial screenings required because § 1915 removed the "economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.") (internal citation omitted); Whitehead v. Paramount Pictures Corp., No. 1:08CV792, 2009 WL 1565639, at *4 (E.D. Va. May 28, 2009), *aff'd in part sub nom*. Whitehead v. Paramount Pictures, Inc., 366 F. App'x 457 (4th Cir. 2010) (upholding dismissal). Thus, while 28 U.S.C. § 1915(e)(2)(B) speaks specifically to review as to *pro se*

5

litigants who are prisoners, the Court may conduct such a screening regardless of whether a *pro se* litigant is a prisoner.

Relatedly, the undersigned of course is mindful of Plaintiff's *pro se* status in this context. Because Plaintiff is proceeding *pro se*, the Court must liberally construe the pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A *pro se* complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which a plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

The Complaint [ECF No. 1] and accompanying narrative provide **no** factual allegations as a basis for the Plaintiff's claims which would allow this Court to grant relief. Nor does Plaintiff set forth in the Complaint any necessary legal grounds which would entitle him to any sort of relief in this matter.

The undersigned is mindful that Rule 8(a) of the Federal Rules of Civil Procedure does not generally require that claims be pled with great detail. Nonetheless, claims must be pled with sufficient detail such that a defendant has fair notice of the basis of a plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). More specifically:

> It is established that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. We have recognized that facial plausibility is established once . . . the complaint's factual allegations produce an inference . . . strong enough to nudge the plaintiff's claims across the line from conceivable to plausible. In assessing the sufficiency of a complaint, we assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Thus, to satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual

6

> heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged.

Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017) (internal citations and quotations omitted). Necessarily implied in this analysis, of course, is that the legal claims asserted must have a basis in law.

The principal issue here is that Plaintiff simply does not explain how Defendant wronged him in any compensable fashion. By his accompanying narrative (which appears to be correspondence directed at Defendant, and not necessarily a component of a well-pleaded complaint), Plaintiff takes issue with Defendant's review of his medical practice, which culminated in Defendant's resignation. In review of the narrative, one is left wondering how Plaintiff alleges that Defendant harmed him. For instance, Plaintiff invokes "Title VI." The undersigned surmises, but cannot be entirely sure, that Plaintiff is invoking Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000(d) et seq. ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.") To make a prima facie case of discrimination here, a claimant must:

> present by a preponderance of the evidence that: (1) he was a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) the defendant treated other similarly-situated employees who were not members of the class more favorably.

Paul v. Theda Med. Ctr., Inc., 465 F.3d 790, 794 (7th Cir. 2006). But Plaintiff herein makes absolutely no factual allegations about being a member of a protected class or showing that he was treated differently vis-à-vis other employees of such a class. Thus, to the extent which he attempts to lodge a Title VI claim as the undersigned presumes, Plaintiff's attempt wholly fails.

On another note, Plaintiff vaguely alleges due process claims under the Fifth Amendment and Fourteenth Amendment. However, Plaintiff does nothing to explain how those sections constrain or apply to Defendant herein, or what specific acts alleged are in contravention of those sections of the amendments relied upon. Plaintiff does not even allege how Defendant is a public entity or actor which could be subject to such liability. See generally DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). Thus, Plaintiff makes no viable constitutional claim. Plaintiff otherwise alleges "unlawful termination" but gives absolutely no additional legal authority on which he relies for such a claim. And finally, Plaintiff alleges liability under 18 U.S.C. § 242, which is a criminal statute for deprivation of rights under color of law. However, Plaintiff cites no authority for how this criminal statute, ordinarily invoked by governmental law enforcement, could give rise to civil liability by which a private party such as Plaintiff may seek relief.

At bottom, then, the undersigned finds that the Complaint and accompanying materials, by which Plaintiff attempts to propound legal claims, simply does not contain sufficient factual allegations tied to viable legal claims. Thus, Plaintiff articulates no cognizable legal causes of action. Plaintiff presents no basis on which he can proceed with a civil action here.

Aside from the failure to articulate facts regarding Defendant in support of his claims, Plaintiff also fails to name a party-defendant which appears to be a legal entity, as explained above. In short, it appears that Plaintiff made a mistake in identifying the entity he wishes to sue. Of course, the undersigned cannot speculate which entity Plaintiff intended to sue, and the Court cannot correct this deficiency for the Plaintiff. This threshold issue is fatal to Plaintiff's lawsuit.

As impactful as the facts alleged may have been to Plaintiff's professional opportunities, health, home, and family, Plaintiff does nothing to detail how Defendant contravened any provision at law or policy of any sort – be it constitutional, statutory, regulatory, the common law, or otherwise. Plaintiff does cite to certain caselaw in an attempt to explain how his underlying criminal prosecution was in error. Linder v. United States, 268 U.S. 5 (1925); Ruan v. United States, 142 S.Ct. 2370 (2022) (holding that to maintain criminal liability of a physician under the Controlled Substances Act, jury must find that a defendant subjectively believed they were wrongly prescribing medications). Plaintiff does not explain how either the Linder decision or the Ruan decision give rise to a private cause of action in this civil context or otherwise supports his claims. Plaintiff specifies no other cause of action to pursue. This falls woefully short of any necessary component of a well-pleaded complaint required to maintain a cause of action. As helpfully summarized in an adjacent District:

> [C]ourts have "unhesitatingly dismissed actions where the complaint:
>
> • consisted of "a labyrinthian prolixity of unrelated and vituperative charges that def(y) comprehension," Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972), cert. denied, 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973);
> • was "confusing, ambiguous, redundant, vague and, in some respects, unintelligible," Wallach v. City of Pagedale, Missouri, 359 F.2d 57, 58 (8th Cir. 1966);
> • was "so verbose, confused and redundant that its true substance, if any, is well disguised," Corcoran v. Yorty, 347 F.2d 222, 223 (9th Cir.), cert. denied, 382 U.S. 966, 86 S.Ct. 458, 15 L.Ed.2d 370 (1965);
> • contained "a completely unintelligible statement of argumentative fact," Koll v. Wayzata State Bank, 397 F.2d 124, 125 (8th Cir. 1968), with "little more than demands, charges, and conclusions," Burton v. Peartree, 326 F.Supp. 755, 758 (E.D. Pa. 1971);
> • represented "circuitous diatribes far removed from the heart of the claim," Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); or
> • set forth "a meandering, disorganized, prolix narrative," Karlinsky v. New York Racing Association, Inc., 310 F.Supp. 937, 939 (S.D.N.Y. 1970).
>
> Jianqing Wu v. TrustPoint Int'l, No. CV PWG-15-1924, 2015 WL 13091378, at *1 (D. Md. Oct. 5, 2015) (formatting altered) (quoting Brown, 75 F.R.D. at 499

9

> (dismissing complaint that was "a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies" and that "contain[ed] an untidy assortment of claims that [were] neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments")).

Plumhoff v. Cent. Mortg. Co., 286 F. Supp. 3d 699, 702 (D. Md. 2017).

Plaintiff's Complaint herein falls into such a category of such poorly-articulated pleadings, and is worthy of outright dismissal. To summarize, the undersigned cannot discern a clear nexus between (a) the sets of factual allegations made and (b) the intended cause(s) of action which Plaintiff seeks to bring. Nor can the undersigned discern the assertion of permissible claims otherwise. Thus, even when construing the *pro se* Complaint most liberally, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), the undersigned respectfully **FINDS** that the Complaint (and citation to authority in related attachments), as currently written, is without foundation in fact and does not set forth cognizable claims at law. As such, the Complaint does not sufficiently state a claim for relief. Twombly, 550 U.S. 544. The Complaint is so insufficient that it does not provide Defendant with fair notice of the nature of the claim(s) which Plaintiff would lodge against it or the relief Plaintiff would have this Court order.

## IV. RECOMMENDATION

For the abovementioned reasons, the undersigned **FINDS** that the Complaint [ECF No. 1] fails to state a claim upon which relief may be granted. Accordingly, the undersigned respectfully **RECOMMENDS** Plaintiff's Complaint, filed in *forma pauperis* [ECF No. 1], should be **DISMISSED** in its entirety **WITHOUT PREJUDICE** after review and screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for want of compliance with Fed. R. Civ. P. 8(a). Further, the undersigned **RECOMMNEDS** that Plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] be **DENIED**.

Any party shall have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to send a copy of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, and to the *pro se* Plaintiff by certified mail, return receipt requested.

**DATED**: December 12, 2022.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE